UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMYUNA JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.  08 C 3382 |
| | ) | |
| CITY OF CHICAGO, | ) | JUDGE GETTLEMAN |
| | ) | |
| | ) | Jury Demand |
| Defendant. | ) | |

### DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS

Defendant, City of Chicago, ("Defendant City") by its attorney, Mara S. Georges, respectfully moves this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted.  In support of its motion, Defendant City states as follows:

### INTRODUCTION

Plaintiff seeks remedies pursuant to the Civil Rights Act as codified under 42 U.S.C. § 1983 and § 1985 against Defendant City.[1] *See Plaintiff's Amended Complaint*, p. 2, ¶ 8, attached hereto as *Exhibit 1*.  Specifically, Plaintiff's four-count complaint seeks redress for the following claims: False Arrest (Count I), Perjury (Count II), a so-called Violation of Civil Rights (Count III), and Conspiracy (Count IV).

---

[1] Plaintiff also seeks redress pursuant to Title VII 42 U.S.C § 200 *et seq*.  However, as indicated on the face of the complaint and attached exhibits, plaintiff was not an employee of the City of Chicago at the time of this incident. Further a claim under Title VII may not be brought in federal court until after a charge of discrimination is timely filed with the EEOC and the EEOC has issued a right-to-sue letter.  *See* 42 U.S.C. § 2000e-5(e)-(f)(1); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798 (1973) (noting that filing timely charge of discrimination and issuance of right-to-sue letter are two "prerequisites" to any Title VII action).

**Factual Allegations**

Plaintiff alleges that on August 30, 2007, she was at a McDonalds restaurant located at 7900 S. King Drive. According to the complaint, Plaintiff was assaulted and/or battered by an unknown person whom Plaintiff alleges was an off duty police officer employed by the restaurant as a security guard (herein referred to as "security guard"). *See Exh. 1*., attachment C. Plaintiff alleges that she called the police to report the incident, and waited at the restaurant until police officers (hereafter, "responding officers") responded.[2] *Id.*, at ¶¶ 9, 11. Plaintiff did not know at the time of the assault and battery that the individual who allegedly assaulted her was an off duty police officer. *Id.*, at ¶ 32; *see also id.*, at Attachment C. Plaintiff was told by the manager of McDonalds that this security guard worked for the restaurant but at the time of the incident the security guard was not dressed in a uniform and did not wear anything to indicate that he was a security guard. *Id.,* at ¶¶ 29, 30; *see also id.*, at Attachment C.

After arriving at the restaurant, the responding officers spoke to the security guard and then informed Plaintiff she was under arrest for criminal trespass. *Id.*, at ¶ 12. Plaintiff alleges that responding officers handcuffed her and placed her in the squad car, told her that she was being charged with a misdemeanor, but instead of taking her to the police station, drove her to her residence and let her go. *Id.*, at ¶¶ 12-14, 19-21. The responding officers allegedly told Plaintiff that if she wanted to pursue this matter against the security guard, she should visit the restaurant the next day. *Id.*, at ¶ 23.

---

[2]The complaint refers to these police officers as defendants but does not identify them and does not name them in the caption of the law suit. Additionally, no individual defendants have been served.

Plaintiff does not allege that she took the responding officers' advice. Instead, she alleges she filed two complaints with the Office of Professional Standards. *Id.,* at ¶ 26. She alleges, however, that the police department did not adequately investigate her complaints, and she has yet to receive a proper response regarding the investigation. *Id.*, at ¶¶ 34-36.

<u>**Claims Asserted**</u>

Plaintiff now asserts in Count I of the complaint that even though she was not taken to the police station the responding officers arrested her and lacked probable cause to do so. Her perjury claim in Count II is levied against the security guard, whom Plaintiff accuses of lying to the responding officers. Count III alleges a general violation of Plaintiff's civil rights. The complaint does not specify which civil right she alleges was violated, but it appears Plaintiff is complaining of the police department's failure to adequately investigate her complaints of police misconduct related to her arrest. Plaintiff's final claim, in Count IV, is for conspiracy. Here Plaintiff alleges she was deprived of equal protection of the law. Again, the basis of this claim is not entirely clear, but it appears to rest on the alleged inadequacy of the OPS investigation. None of these claims has merits, as Plaintiff has failed to adequately set forth a cause of action upon which relief may be granted. Hence the complaint should be dismissed in its entirety.

<u>**LEGAL STANDARD**</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure requires a court to consider all well-pleaded allegations in the complaint as true and draw all reasonable inferences therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2003). In considering these facts, the Court is entitled to consider exhibits attached to the complaint as part of the pleadings, and may

take judicial notice of public records relevant to the claims. *Beam v. IPCO Corp.,* 838 F.2d 242, 244 (7th Cir. 1988); *Doherty v. City of Chicago*, 75 F.3d 318, 324 (7th Cir. 1996). Courts will dismiss a complaint under Rule 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Ledford v. Sullivan*, 105 F.3d 354, 357 (7th Cir. 1997) (internal quotations and citations omitted).

For a complaint to adequately state a claim that entitles the plaintiff to relief, it must meet two requirements. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, the complaint must "describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* (*quoting Bell Atlantic Corp. v. Twombley*, 127 S.Ct. 1955, 1964(2007)). Second, the complaint's allegations must "plausibly suggest that the plaintiff has a right to relief." *Id.* To meet the plausibility standard, a complaint must include enough factual allegations to "raise the right to relief above a speculative level." *Twombley*, 127 S.Ct. at 1965. While a *pro se* litigant's pleadings are held to a less stringent standard, he must nonetheless act in accordance with court rules. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996); *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994) ("*pro se* litigants are not entitled to a general dispensation from the rules and procedure or court imposed deadlines.") (citations omitted).  Unsupported conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Id.* at 1964-65; *see also Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002) (court not "obliged to accept as true legal conclusions or unsupported conclusions of fact.").

## **ARGUMENT**

## **I.    Plaintiff Fails to State a Claim for False Arrest Because the Complaint Indicates the**

**Responding Officers Had Probable Cause to Arrest Her.**

Plaintiff claims she was falsely arrested by the responding officers for criminal trespass after she reported an assault and battery by a security guard. *See Exh. 1*, pp. 4-5, ¶¶ 1- 3. This claim must fail. It is well-established that the existence of probable cause for an arrest is an absolute bar to any Section 1983 claim for wrongful arrest. *See Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir.2006); *Fernandez v. Perez*, 937 F.2d 368, 370 (7th Cir. 1991); *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir. 1989). Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." *Gray v. Burke*, 466 F.Supp.2d 991, 996 (N.D.Ill. 2006) (internal quotation omitted); *see also Hughes v. Meyer*, 880 F.2d 967, 969 (7th Cir. 1989). The court determines whether probable cause exists "not on the facts as an omniscient observer would perceive them, but rather as they would have appeared to a reasonable person in the position of the arresting officer." *Mustafa*, 442 F.3d at 547, *quoting Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 2000).

Here, Plaintiff claims that the responding officers arrested her after they first spoke to the security guard and the restaurant manager. *Exh. 1.*, at ¶ 12. A fair reading of the complaint suggests that the security guard and the restaurant manager told the responding officers that Plaintiff had trespassed upon the restaurant and the security guard requested they arrest her. From their conversation with the security guard, the responding officers had probable cause to arrest Plaintiff for criminal trespass. *Id.,* at ¶¶ 9, 11, 29 and 30. The Seventh Circuit has consistently held that a police officer has probable cause when he receives information from

5

some person, typically a single eyewitness or putative victim of a crime, who it seems reasonable to believe is telling the truth. *Mustafa*, 442 F.3d at 548; *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000); *Spiegel v. Cortese*, 196 F.3d 717, 724 (7th Cir. 1999); *Sheik-Abdi*, 37 F.3d at 1247; *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991); *Gerald M. v. Conneely*, 858 F.2d 378, 381 (7th Cir. 1988); *Grameno v. Jewel Cos., Inc*. 797 F.2d 432, 439 (7th Cir. 1986), *cert. denied*, 481 U.S. 1028 (1987). When probable cause has been established from the report of a reasonably credible witness or victim, there is no constitutional duty for the officer to investigate further. *Askew v. City of Chicago*, 440 F.3d 894, 895) (7th Cir. 2006); *Woods*, 234 F.3d at 997; *Spiegel*, 196 F.3d at 725; *Sheik-Abdi*, 37 F.3d at 124. Rather, the rule of probable cause allows police to arrest an individual and let prosecutors and the courts determine who is telling the truth. *Askew*, 440 F.3d at 895.

In this case, the responding officers had probable cause to arrest Plaintiff for trespass based on the information they received from the security guard and manager. She admits that she was on the restaurant's premises and saw the responding officers speak to both the manager and security guard before she was arrested. *See*, *Exh. 1*, attachment C**.** The responding officers had no constitutional duty to further investigate before arresting her. The complaint indicates the responding officers conducted a sufficient inquiry before arresting her. Plaintiff has pled herself out of court on the false arrest claim and so Count I should be dismissed.

## II.    **Plaintiff Has Failed to State a Cause of Action Against the Security Guard.**

Count II of the complaint is addressed against the security guard, whom Plaintiff alleges

committed perjury by providing false information to the responding officers.[3]  Plaintiff complains

that the responding officers relied on this false information as a basis to arrest her.  Count II fails

for two reasons.  First, the complaint makes clear that the security guard was not acting under

color of law.  Second, the information he provided the arresting officers, even if false, is not

perjury.

### A.    The Security Guard Did Not Act Under Color of Law.

It is well-settled that to incur liability under § 1983, the alleged wrong-doer must have

been acting under color of law.  As a general rule, "a public employee acts under color of state

law while acting in his official capacity or while exercising his responsibilities pursuant to state

law." *West v. Atkins,* 487 U.S. 42, 50 (1988). Although a police officer is a public employee, it

does not necessarily follow that all of his actions occur under color of state law. *Gibson v. City of*

*Chicago,* 910 F.2d 1510, 1516 (7th Cir. 1990). Whether a police officer acted under color of state

law is not determined by whether he was on or off duty. *See Pickrel v. City of Springfield, Ill.,* 45

F.3d 1115, 1118 (7th Cir. 1985).  Rather, it is determined by whether his actions related in some

way to the performance of police duties. *See Gibson,* 910 F.3d at 1516. Thus, "deciding whether

a police officer acted under color of state law should turn largely on the nature of the specific acts

the police officer performed, rather than on merely whether he was actively assigned at the

moment to the performance of police duties." *Pickrel*, 45 F.3d at 1118.

Accordingly, if a police officer's actions do not relate to the performance of his police

duties, he has not acted under color of state law and cannot be liable under section 1983. *See,*

---

[3] Plaintiff also claims the security guard assaulted and battered her, for the reasons stated in Section II (A), this claim is also without merit.

*e.g., Herrera v. Chisox Corporation,* 1995 WL 599065 (N.D.Ill.). There, the court ruled that off duty sheriffs were not acting under color of law because it was undisputed that they were not acting in the course of their official duties. The court looked to the circumstances surrounding the arrest and any outward indicia suggestive of state authority. The sheriffs never identified themselves as deputy sheriffs, or showed the plaintiff their badge, and because they were officially off duty, not in uniform, and did not carry their guns, nightstick, radio, handcuffs, or have their state vehicle, and they brought the plaintiffs into a security office rather than the police station and did not accompany the officers when they transported the plaintiff to the police station.

Here, just like the deputies in *Herrera,* the security guard did not wear a police uniform and did not identify himself as a police officer to Plaintiff. Nor does Plaintiff allege the security guard, beyond acting as a complaining witness, participate in any way in her arrest. In fact, further divorcing himself from any state-authority, he allegedly told Plaintiff to call the police if she did not like his actions. *See Exh. 1*, p. 3, ¶ 24; attachment C. Additionally, Plaintiff alleges the restaurant manager informed her that the security guard was acting as a security guard for the restaurant, not as a police officer. *Id.*, at attachment C. It is clear from the face of the complaint, then, that the security guard did not acted under color of state law and hence cannot be held liable under §1983.

### B.   The Security Guard Did Not Commit Perjury.

Plaintiff's claim against the security guard also fails because it is clear from the four corners of the complaint that he did not commit perjury. An element of perjury is that the false statement be sworn or given under oath. *Black's Law Dictionary, 8th Ed.* Plaintiff does not

identify with any particularity the statement she alleges is false.  She merely alleges that she saw

the security guard speak with the responding officers before she was arrested.  From this she

assumes that the security guard lied to the police offices so as to have them arrest her.  But these

statements, even if false, are an insufficient predicate for a perjury claim, for there is nothing in

the complaint to suggest the security guard spoke to the responding officers under oath.  Indeed,

common practice suggests the statements were not sworn in any way.  And, critically too,

Plaintiff does not allege that the security guard reduced his statement to writing in any sworn

document.  Accordingly, Count II should be dismissed.

**III.    Plaintiff Fails to Allege a Cognizable Claim in Count III of the Complaint.**

Count III of the complaint is entitled "Violation of Civil Rights-Deprivation of Rights."

It is unclear what specific civil rights Plaintiff is refers to here, but the allegations within this

count cite the First, Fourth, and Fourteenth Amendments.  If it is her arrest she is challenging,

then Count III fails for the same reasons as Count I; the complaint suggests the responding

officers had probable cause to arrest Plaintiff because they interviewed a witness before arresting

her.  Any allegations directed against the security guard fail for the reasons Count II fails.

The factual allegations new to Count III focus on Plaintiff's efforts in initiating a

complaint with the police department regarding her arrest at the McDonalds and her belief that

the police department did not adequately investigate her allegations.  Without a more definite

statement is impossible to be certain of Plaintiff's theory of relief, but apparently she believes the

failure of the police department to adequately investigate her complaint was a denial of her civil

rights.

Even if the police did not seriously entertain her allegations, Plaintiff cannot state a cause

on this ground because the Seventh Circuit has not recognized an allegation of "inadequate police investigatory work" as a civil rights claim in the absence of another recognized constitutional right. *Jacobson v. National Railroad Passenger Corp.,* 1999 WL 1101299 at *10 (N.D. Ill., Nov. 29, 1999); *Gomez v. Whitney*, 757 F.2d 1005, 1006 (7th Cir. 1985); *David v. Village of Oak Lawn*, 954 F.Supp. 1241, 1245-46 (N.D.Ill. 1996) (holding that plaintiff did not have a constitutional right to have his complaints investigated); *Washington v. Godinez*, 1996 WL 599055 at *3 (N.D.Ill. Oct. 17, 1996).  In *Gomez*, the plaintiff attempted to persuade the police to investigate the death of his son for two years.  757 F.2d at 1006.  The appellate court affirmed the lower court's entry of summary judgment against plaintiff, holding that there is no right to have a full and fair police investigation.  *Id.*  Police officers are not constitutionally mandated to conduct an investigation.  *Slagel v. Shell Oil Refinery*, 811 F.Supp. 3778, 382 (C.D.Ill. 1993) (holding that police officer has no federal, constitutional mandate to conduct an investigation into plaintiff's assault charge).  Hence, Plaintiff does not have an express constitutional right to an investigation into her allegations against the defendant officers, let alone a full, fair or error free investigation.

The "public duty rule" under state law also precludes Plaintiff from making a claim of an inadequate investigation.  This rule provides that a municipality's duty is to the public at large, rather than to specific members of the community. *See Zimmerman v. Village of Skokie,* 183 Ill.2d 30, 44 (1998).  There is also a corresponding immunity under the Local Governmental and Governmental Employees Tort Immunity Act that immunizes local public entities and public employees for the failure to provide adequate police protection or services. *745 ILCS 10/4-102 (2004).*

As previously stated, it is unclear where Plaintiff believes lies the basis for her claim.  But whether she believes it is the First, Fourth, or Fourteenth Amendment does not matter.  There simply is no cause of action for the police department's alleged failure to adequately investigate her claims.[4]

## IV.     Plaintiff Has Not Adequately Pled a Conspiracy Claim.

In Count IV, Plaintiff alleges a conspiracy to violate her civil rights.  To establish a prima facie case of civil conspiracy, a plaintiff must show not only "an express or implied agreement among defendants to deprive a plaintiff of his or her constitutional rights," but also the "actual deprivations of those rights in the form of overt acts in furtherance of the agreement."  *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988).  The Seventh Circuit has held that the absence of an underlying violation of a constitutional right precludes the possibility of succeeding on a conspiracy claim.  *Indianapolis v. Minority Contractors Ass'n v. Wiley*, 187 F.3d 743, 754 (7th Cir. 1999)(quoting *Scherer,* 840 F.3d at 442).  On this basis, Count IV fails.  As explained above, on the facts alleged, Plaintiff cannot state a claim for a denial of a constitutional right; her arrest was lawful, the security guard did not act under color of law, and there is no constitutional right to a police investigation.  Hence Plaintiff did not – and cannot – state a cause of action for conspiracy.

New to Count IV is Plaintiff's assertion that "the Defendant failed to provide the equal protection laws."  *Exh 1, p.8 ¶ 4.*  But even if the conspiracy claim is understood to include this

_____

[4]Additionally, Plaintiff pleads herself out of court on this count.  She attached to her complaint two letters from the Chicago Police Department indicating that, while the police department received her complaint, she failed to file it with the proper office.  *See Exh. 1,* attachments A and B.

11

allegation, the complaint still fails. "To establish a *prima facie* case of discrimination under the equal protection clause, [plaintiff is] required to show that the is a member of a protected class, that he is otherwise similarly situated to members of the unprotected class, and that he was treated differently from members of the unprotected class." *McNabola v. Chicago Transit Authority,* 10 F.3d 501, 513 (7th Cir. 1993) (internal quotations omitted.). In other words, Plaintiff must show others who were similarly situated were treated differently. *Hoskins v. City of Milwaukee,* 2008 WL 83942 (7th Cir. 2008). Plaintiff has failed to even allege she is a member of a protected class, much less that she was treated differently from others similarly situated to her. These allegations cannot even be inferred from the facts alleged. In order for a plaintiff to meet adequately plead a claim of conspiracy, a complaint must include enough factual allegations to "raise the right to relief above a speculative level." *Twombley*, 127 S.Ct. at 1965. Unsupported conclusions and a "formulaic recitation of the elements of a cause of action" will not suffice. *Id*. at 1964-65. *See also Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002) (court not "obliged to accept as true legal conclusions or unsupported conclusions of fact."). Any claim premised upon equal protection clearly fails this standard. The complaint's allegation of a conspiracy rests upon rank speculation and bald legal conclusions. Accordingly, Count IV should also be dismissed.

## V.      **Plaintiff Has Failed to Establish Municipal Liability.**

While Plaintiff's complaint occasionally refers to the responding officers, the security guard, and perhaps, two sergeants as "defendants," Plaintiff formally named and served only one defendant, the City of Chicago. It is unclear on what legal theory Plaintiff predicates the City's liability, but only two theories exist and the complaint fails on both of them. The simplest and

most common theory of liability would be based on the doctrine of *respondeat superior*.  But Plaintiff cannot recover from the City of Chicago on this ground because it is well-settled that a municipality cannot be liable under a *respondeat superior* theory on causes of action arising from §1983.  "A municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997).

The second method of municipality is a so-called policy claim under *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658, 694 (1978).  But there are two problems with any attempt of Plaintiff to recover from the City under this theory.  First, Plaintiff has not plead any policy or practice claim.  Second, a *Monell* claim cannot be sustained against a municipality if a plaintiff fails to establish an underlying constitutional violation.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).  As already explained, Plaintiff has failed to state a cognizable cause of action against any individual actor.  Hence Plaintiff cannot recover from the City of Chicago under this theory as well.[5]  Hence all claims against the City of Chicago should be dismissed.

WHEREFORE, the Defendant City of Chicago respectfully requests that this Court dismiss plaintiff's complaint in its entirety for all of the reasons stated *supra*, and enter an order granting such requests pursuant to Fed. R. Civ. P. 12(b)(6).

---

[5]For the same reason, Plaintiff could not recover from the City of Chicago under any state law theory.  While the complaint does not purport to bring any state law causes of action, Plaintiff is similarly prevented from seeking damages from the City on any state law claims she may contemplate raising, for under the Tort Immunity Act, a municipality is not liable for an injury resulting from an act or omission of its employee where its employee is not liable.  *See* 745 ILCS 10/2-109 (2006).

Respectfully submitted,
MARA S. GEORGES
Corporation Counsel of the City of Chicago

By:     /s/ Suyon Reed
Assistant Corporation Counsel

30 North LaSalle Street - Suite 1400
Chicago, Illinois  60602
(312) 744-3283
Attorney No. 06280973

14

EXHIBIT 1

In The Circuit Court of Cook County, Illinois

FILED B - 7

2008 MAY -1 AM 8:33

DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK COUNTY, IL

Kimyuna Jackson

Plaintiff

V

No: ~~07L0141179~~

07L0147179

City of Chicago

Defendant

Amended

## JURISDICTION AND VENUE

This action being brought pursuant to Title VLL of the Civil Rights Act of 1964, codified at 42U.S.C 200 et seq. (Title VII), the Civil Rights act of 1866, codified at 42 of 1991, the civil rights act of 1871, codified at 42 U.S.C 1983 for violations equal protection and due process of the fourteenth amendment to the United States Constitution to redress Plaintiff rights to be free from false arrest and retaliation from the City of Chicago under color of law in their capacity.

The jurisdiction of this court is invoked pursuant by Illinois federal and state law. The amount in controversy is more than 1 million dollars. Venus lies in court Illinois State and federal laws. The Defendant is the City of Chicago. The Plaintiff Kimyuna Jackson is a resident in the city of Chicago, which is located in the state of Illinois. The place in which these tortuous act occurred, moreover, these acts are listed below.

## Introduction

1. The action is for damages for intentional infliction of emotional distress, false arrest, perjury at the state and federal level and violation of 42 U.S.C. 1983 –Deprivation of civil rights, along with violation of 42 U.S.C. 1985 by police officers that are employed by the City of Chicago attempting to falsely arrest Plaintiff during a compliant attempt of assault/battery by an unknown man in Mc Donald's located at 7900 s King Dr.

2. The Plaintiff had called the Chicago Police Department due to an assault battery, and instead of being allowed to file the compliant, Defendant looked at Plaintiff and asked her if she was named Ms. Jackson and placed her in handcuffs.

3. Prior to calling the police Plaintiff had been told by the Mc Donald's manger that Defendant had been an off duty police officer employed by Mc Donald's as security at night.

4. The Defendant than placed the Plaintiff in the car and started to talk to the off duty police officer.

5. The Defendants than got into the car and told the Plaintiff that she was being arrested for criminal trespass.

6. The Plaintiff Kimyuna Jackson hereby asserts the following claims against the Defendants in the above listed action:

      I.      False Arrest

      II.      Perjury

      III.      Violation of Civil Rights –Conspiracy to interfere with Civil Rights

      IV.      Violations of Civil Rights –Civil Action for deprivation of Rights

The Plaintiff Kimyuna Jackson claims damages against the Defendant the City of Chicago for an attempt of false arrest on August 30, 2007.

I. All the above due to the City of Chicago inability to follow proper compliant procedures falsely arresting plaintiff on her phone call to the police for an assault/ battery by an Off duty police officer.

II. Violations of the Fourteenth Amendment failure to provide equal protection laws.

## The Parties

7. Plaintiff Kimyuna Jackson is a resident in the City of Chicago.

8. Defendant The City of Chicago

## Facts

9. On August 30, 2007 the Plaintiff Kimyuna Jackson called the Defendant in regards to a battery/assault by an off duty police officer employed by Mc Donald's located at 7900 s King Dr. The Defendant instead falsely arrested the plaintiff for criminal trespass the Mc Donald's based on the information provided by the man that assault/battery her knowing that such acts had been wrong willfully and wantonly to inflict emotional stress with performing actions that were false, reckless, malicious, hurtful, incriminating, dangerous, etc, with no regards of the Plaintiff reputation wanting to leave Plaintiff with a criminal background.

10. The Defendants arrived at 7900 s King Dr located in Chicago, Illinois after being called by the Plaintiff in regards to an assault/ battery performed in the store by an off duty police officer.

11. The Plaintiff had been waiting in the store for the Defendant, and once the Defendant arrived at the store the Plaintiff walked outside to talk to them in regards to the assault/ battery action performed.

12. The Plaintiff walked up to the Defendant and started to speak. The Plaintiff had been told to lower her voice because she was talking to loud, and was placed into handcuffs. The other Defendant return to the car after speaking with the man that performed the assault /battery and told Plaintiff she was bring arrested for criminal trespass the Mc Donald's located at 7900 s King Dr.

13. The Plaintiff looked at the police screen while in the car and saw that the Defendant had been responding to an assault battery charge.

14. The Defendant told Plaintiff that she was being arrested for criminal trespass the Mc Donald's and she was being taken to 103 street police station for further processing.

15. The Plaintiff asked the Defendant if this had been a felony or misdemeanor. The Defendant had responded that this was a misdemeanor charge.

16. The Defendant than began to drive the car away from the police station

17. The Defendant started to drive down the block and got a phone call.

18. The Defendant than stop the car and asked his partner to get out the car to speak with her.

19. The Defendants than return to the car and one of the officers told the Plaintiff that she seems like a claim person and wanted to know where she lived.

20. The Plaintiff gave the Defendant her address which at that time had been 7710 s. Avalon Chicago, Illinois.

21. The Defendant drove Plaintiff to her residence.

22. Once out the police car Plaintiff felt it would be safe to ask the Defendant what about the assault/ battery that she had called the Defendant about.

23. The Defendant than told the Plaintiff to go to the Mc Donald's located at 7900s King Dr. the next night at the same time and call the police.

24. The Defendant had been writing up some paper work, while in front of the Plaintiff house. The Plaintiff asked the Defendant for a copy was told no what he was writing had been for the Mc Donald's located at 7900 s King Dr.

25. The Plaintiff had been too scared to ask the Defendant for any more information fearing that they would arrest her again.

26. The Plaintiff filed two complaints with the city on Sept 4 and 6, 2007 with Office of Professional Standards and was called into the office to speak with SGT Walsh in regards to the investigation of the conduct of the police in regards to this incident on August 30, 2007.

27. The Plaintiff was asked by SGT Walsh if she wanted to rectify the situation by filing a complaint of this unknown man.

28. The Plaintiff informed SGT Walsh that the officers had been unable to provide her with the identity of the man, and she was not going to return to the Mc Donald's due to not wanting to be arrested again for criminal trespass.

29. The Plaintiff had requested that the conduct of the officers be investigated due to being told by the manager of the Mc Donald's that he had been an off duty police officer doing security for that store.

30. The know known Defendant didn't wear a security uniform, badge, Mc Donald's uniform or anything to make his present known as security.

31. The Plaintiff express this to SGT Walsh and informed him that this was the reasons why she had been scared of asking the names of the police officers that told her she was being arrested for criminal trespass the Mc Donald's.

32. SGT Walsh than had SGT Peak ask the Plaintiff questions. SGT Peak had started to yell and scream at the Plaintiff saying that she knew the man that performed the assault/battery against her had been and off duty police officer. The Plaintiff then replied that she did not know he was the police, and if he was she wanted to file a complaint against him for battery/assault.

33. The Defendant than had plaintiff sign a waiver and said the matter will be investigated.

34. The Plaintiff walked out of the room and wanted the conduct of SGT Peak investigated. He then yelled out of the room by the time this gets done. He will be retired.

35. Both individuals were employed by the City of Chicago this names these individuals as Defendants.

36. Here since the occurrence the Plaintiff has not received a response regarding the investigation and has exhausted all manner to this matter resolved with a request to two OPS, interview with SGT Walsh, SGT Peak, and Signing Waver for investigation after being integrated.

Count I False Arrest

The Plaintiff hereby incorporates each and every paragraph as set forth fully herein to be true:

1. On August 30,2007 Plaintiff called Defendant in regards On August 30, 2007 t in regards to a battery/assault, the plaintiff had experience by an unknown man at a Mc Donald's located at 7900 s King Dr.

2. The Defendant instead arrested the Plaintiff Kimyuna Jackson for criminal trespass the Mc Donald's based on the information provided by the off duty police officers that had assaulted/battery the Plaintiff.

3. Defendant deliberately wanted to leave the Plaintiff with a criminal background which would endanger the Plaintiff opportunity to gain employment.

4. Plaintiff had been unable to utilize her first amendment rights with an action of arrest, instead of being able to file a complaint against the off duty police officer. The plaintiff has a right to be free from excessive and unreasonable state action.

## Count II Perjury

The Plaintiff hereby incorporates each and every paragraph as set forth fully herein to be true:

1. The off duty police officer employed by the Mc Donald's located at 7900 s King Dr assault/battery the Plaintiff as she had been trying to exit the store during business operation hours of the store.

2. The off duty officer provided the officers with information that made them false arrest Plaintiff.

3. Defendant deliberately wanted to leave the plaintiff with a criminal background, which would endanger the Plaintiff opportunity to gain employment in the future. The Plaintiff had been unable to utilize her first amendment rights with an action of arrest. Plaintiff has a right to be free from excessive force and unreasonable state action from the Defendant.

## Count III Violation of Civil Rights -Deprivation of Rights

1. Plaintiff hereby incorporates that each and every paragraph as set forth fully herein to be true:

2. On August 30, 2007 the Plaintiff Kimyuna Jackson called the Defendant in regards to a battery/assault by an unknown man. The Defendant instead falsely arrested the plaintiff for criminal trespass the Mc Donald's based on the information provided by the man that assault/battery her knowing that such acts had been wrong willfully and wantonly to inflict emotional stress with performing actions that were false, reckless, malicious, hurtful, incriminating, dangerous, etc, with no regards of the Plaintiff reputation wanting to leave Plaintiff with a criminal background.

3. The Defendants arrived at 7900 s King Dr located in Chicago, Illinois after being called by the Plaintiff in regards to an assault battery performed in the store by an unknown man.

4. The Plaintiff had been waiting in the store for the Defendant, and once the Defendant arrived at the store the Plaintiff walked outside to talk to them in regards to the assault battery charge.

5. The Plaintiff walked up to the Defendant and started to speak. The Plaintiff had been told to lower her voice because she was talking to loud, and was placed into handcuffs. The other Defendant return to the car after speaking with the man that performed the assault battery and told Plaintiff she was bring arrested for criminal trespass the Mc Donald's located at 7900 s King Dr.

6. The Plaintiff looked at the police screen while in the car and saw that the Defendant had been responding to an assault battery charge.

7. The Defendant told Plaintiff that she was being arrested for criminal trespass the Mc Donald's and she was being taken to 103 street police stations for further processing.

8. The Plaintiff asked the Defendant if this had been a felony or misdemeanor. The Defendant had responded that this was a misdemeanor charge.

9. The Defendant than began to drive the car away from the police station without reading Plaintiff her rights.

10. The Defendant started to drive down the block and got a phone call.

11. The Defendant than stop the car and asked his partner to get out the car to speak with her.

12. The Defendants than return to the car and one of the officers told the Plaintiff that she seems like a claim person and wanted to know where she lived.

13. The Plaintiff gave the Defendant her address which at that time had been 7710 s. Avalon Chicago, Illinois.

14. The Defendant drove Plaintiff to her residence.

15. Once out the police car Plaintiff felt it would be safe to ask the Defendant what about the assault/ battery that she had called the Defendant about.

16. The Defendant than told the Plaintiff to go to the Mc Donald's located at 7900s King Dr. the next night at the same time and call the police.

17. The Defendant had been writing up some paper work, while in front of the Plaintiff house. The Plaintiff asked the Defendant for a copy was told no what he was writing had been for the Mc Donald's located at 7900 s King Dr.

18. The Plaintiff had been too scared to ask the Defendant for any more information fearing that they would arrest her again.

19. The Plaintiff filed two complaints with the city on Sept 4 and 6, 2007 with Office of Professional Standards and was called into the office to speak with SGT Walsh in regards to the investigation of the conduct of the police in regards to this incident on August 30, 2007.

20. The Plaintiff was asked by SGT Walsh if she wanted to rectify the situation by filing a complaint of this unknown man.

21. The Plaintiff informed SGT Walsh that the officers had been unable to provide her with the identity of the man, and she was not going to return to the Mc Donald's due to not wanting to be arrested again for criminal trespass.

22. The Plaintiff had requested that the conduct of the officers be investigated due to being told by the manager of the Mc Donald's that he had been an off duty police officer doing security for that store.

23. The know known Defendant didn't wear a security uniform, badge, Mc Donald's uniform or anything to make his present known as security.

24. The Plaintiff express this to SGT Walsh and informed him that this was the reasons why she had been scared of asking the names of the police officers that told her she was being arrested for criminal trespass the Mc Donald's.

25. SGT Walsh than had SGT Peak ask the Plaintiff questions. SGT Peak had started to yell and scream at the Plaintiff saying that she knew the man that performed the assault/battery against her had been and off duty police officer. The Plaintiff then replied that she did not know he was the police, and if he was she wanted to file a complaint against him for battery/assault.

26. The Defendant than had plaintiff sign a waiver and said the matter will be investigated.

27. The Plaintiff walked out of the room and wanted the conduct of SGT Peak investigated. He then yelled out of the room by the time this gets done. He will be retired.

28. Both individuals were employed by the City of Chicago this names these individuals as Defendants.

29. Here since the occurrence the Plaintiff has not received a response regarding the investigation and has exhausted all manner to this matter resolved with a request to two OPS, interview with SGT Walsh, SGT Peak, and Signing Waver for investigation after being integrated.

30. Defendant deliberately wanted to leave the Plaintiff with a criminal background, which would endanger the Plaintiff opportunity to gain employment in the future. The plaintiff had been unable to utize her first amendment rights with an action of arrest. The Plaintiff has a right to be free from excessive force and unreadable.

31. At all times mentioned herein, Defendants had a duty to observe, recognize and uphold the civil rights and the first amendment rights of the Plaintiff which were protected by the U.S Constitution and the constitution of the state of Illinois . The Defendant knew or reasonably should have known as law enforcement that their action violated Plaintiff right under the first, fourth, and fourteenth amendment rights. Plaintiff is entitled to damages as a result of the Defendants breach of her constitutional rights.

32. At all times mentioned defendants were acting within scope of their employment as City employees under the color of the state and federal laws

      Count IV.  Violations of Civil Rights- Conspiracy to interfere with civil rights

1. The Plaintiff hereby incorporates each and every paragraph as set forth fully herein to be true:

2. On August 30, 2007 the Plaintiff Kimyuna Jackson called the Defendant in regards to a battery assault/battery the Plaintiff had experience by and off duty police officer. The Defendant instead arrested Plaintiff falsely for criminal trespass the Mc Donald's. The arrest had been without probable cause with the Plaintiff being placed in handcuffs and told that she was being arrested for criminal trespass by and uniformed Chicago Police Officers. The Defendant failed to read the Plaintiff her rights during the arrest, just placing her in handcuffs and saying that she would be charged with criminal trespass the Mc Donald's located at 7900 s King Dr.

3. Plaintiff has exhausted all means of trying to get this matter resolved by speaking with OPS letters are attached as exhibit A and B, along with contacting John a. Kujama vice president of franchising of Mc Donald's to get this matter resolved.

4. The Defendant failed to provide the equal protection laws, not allowing the Plaintiff to extend a complaint against city of Chicago employees for assault/battery, and failed to provide Plaintiff with investigation results of both on duty and off duty officers regarding August 30, 2007 incident. This indicates one of the following:

    A. The Defendant did not care about the effects that such action would cause on the life of the Plaintiff

    B. The Defendant had a hidden agenda against the Plaintiff wanting to utilize power of authority on Plaintiff Kimyuna Jackson for no reason leaving Plaintiff with criminal background.

This now being said to be the truth, then the Defendant made an attempt to falsely arrest Plaintiff Kimyuna Jackson, and leave her with a criminal background or even worse.

Damages

Plaintiff hereby incorporates each and every preceding paragraph as set forth fully herein:

1. As direct and proximate result of the conduct and damages of Defendant. Plaintiff has suffered for the following injuries and damages:

    A. Mental Anguish and mental distress in the past and future

    B. Lost of earning due to having to pursue such case Pro See.

    C. Fear that the Defendant will do this again and be successful at their attempts doing more damage.

    D. Future Damages occurred while trying to establish reasons why such false arrest occurred without explanation from the Defendant.

Based upon the foregoing conduct and actions of the Defendants, Plaintiff is entitled to punitive and exemplary damages, as by law not less than 1 million dollars.

### Prayers for Relief

Wherefore plaintiff demands trail and that the following relief is granted:

a.  That Plaintiff is given an award for unnecessary emotional stress. This includes the pain and suffering associated with the ongoing torture given by the Defendant and employees of the Defendant while still waiting for an apology for such actions, as is the case with Plaintiff Kimyuna Jackson. Plaintiff has suffered emotional pain, mental distress, humiliation, loss of social standing, inconvenience, mental anguish, loss of enjoyment of life, loss of income at times having to seek help.

b.  That Plaintiff is granted an award for false arrest

c.  That Plaintiff is granted an award for suffering from counts listed

d.  That Plaintiff is awarded pecuniary damages to discourage this behavior again and give the city of Chicago a remainder that they are accountable to the people as service providers.

e.  That Plaintiff be ordered to pay all acquired doctors bills

f.  That Plaintiff receives judgment from the Defendant for the above, general, and compensatory damages not less than 1 million dollars and punitive damages greater that 1 million.

Signed _Kimyuna Jackson_                    4-30-08

**OFFICE OF PROFESSIONAL STANDARDS**



10 W. 35th St. 12th Fl.
Chicago, IL 60616
(312) 745-3609
**Michael Duffy - Acting,** Chief Administrator

September 5, 2007
Reference: Log No 1008982

KIMYUNA JACKSON
7710 S. AVALON AVE
CHICAGO, IL 60619

Dear Kimyuna Jackson,

The Office of Professional Standards ("OPS") received your information on 04-SEP-2007. It has been forwarded to the Internal Affairs Division.

The OPS registers all complaints against Department members. The OPS is only authorized to investigate complaints alleging excessive force, shootings where an officer discharges his/her weapon and strikes someone, deaths in custody, and domestic violence involving Department members. All other information must be forwarded to Internal Affairs.

For additional information on the status of your complaint, you may contact the Internal Affairs Division at (312) 745-6310.

Sincerely,

MICHAEL DUFFY - Acting
Chief Administrator
Office of Professional Standards





**OFFICE OF PROFESSIONAL STANDARDS**

10 W. 35th St. 12th Fl.
Chicago, IL 60616
(312) 745-3609
**ILANA B. R. ROSENZWEIG,** Chief Administrator

October 4, 2007

Reference: Log No.1009051

KIMYUNA JACKSON
7710 S. AVALON AVE Apt No. 1
CHICAGO, IL  60619

Dear Kimyuna Jackson,

Your complaint registered with the Office of Professional Standards ("OPS") on 06-SEP-2007  has been forwarded to the Internal Affairs Division for investigation.  The Complaint Log Number is  1009051 .

The OPS intakes and registers all complaints against Department members.  By ordinance, OPS investigates only specific categories of complaints.  All other complaints are forwarded to the Internal Affairs Division.

For additional information on the status of your complaint, you may contact the Internal Affairs Division at (312) 745-6310.

Sincerely,

ILANA B. R. ROSENZWEIG
Chief Administrator
Office of Professional Standards

Kimyuna Jackson
7710 s Avalon apt 1
Chicago, Illinois 60619
September 18, 2007

Dear: SGT Walsh

This letter is to make you known that I have made the Vice President of franchising John A. Kujama known of the incident occurs at the Mc Donalds on 79th and King Dr. My letter appears as such on August 29, and 30 of 2007. I walked into a frequently visited Mc Donald's located at 7900 s King Dr at or around 9:30 and made a purchase of a Mc Chicken sandwich, French fries, and three cookies. I then made an attempt to exit the Mc Donald's and got through one set of doors. I stood in the vestibule for 2-3 minutes than continued my exit to make the 79 street bus, I was then stop by an unknown individual that grabbed my arm. on August 29, and 30 of 2007. I walked into a frequently visited Mc Donald's located at 7900 s King Dr at or around 9:30 and made a purchase of a Mc Chicken sandwich, French fries, and three cookies. I then made an attempt to exit the Mc Donald's and got through one set of doors. I stood in the vestibule for 2-3 minutes than continued my exit to make the 79 street bus, I was then stop by an unknown individual that grabbed my arm. This individual grabbed my arm and then grabbed the door speaking aggressively that I could not exit the door. I then wanted an explanation he couldn't provide me with such, replying that I just couldn't walk out this door. I made my way back into the lobby and told him to never touch me again in his life. He then replied if I didn't like it than call the police. I didn't have my cell phone at that time so I exited the Mc Donald's to get on the bus. I got home to learn my order had been incorrect. I have included a copy of the receipt for such order that I was given, along with a copy of my purchase. That late night I then started a compliant with the Mc Donald's corporation informing them that I would return to this location the next business day to get the identity of this individual. On August 30, 2007 I returned to the Mc Donald's to get this matter resolved I spoke with the mid-afternoon manager who called her manager to get direction on the situation. Her manager than informed her to tell me to return and speak with the manager on the shift in which this incident occurred. I returned to this location at 8:30 to speak with the night manager. I asked the night manager did she know the identity of such individuals, as he didn't wear a Mc Donald's uniform,   she then replied, that he had been the police". I asked her how this could be true when he told me to call the police if I didn't like his actions, and he didn't wear a uniform showing that he was a police officer for any district in Illinois, nor did he wear a security uniform. I asked her for his identity information, along with hers to continue to file such compliant. She refused stating that I should get it from him, and he would be in shortly. I called the police wanting to file a compliant for the actions that occurred the previous night. He then walked into the Mc Donald's wearing nothing to show him as being a police officers, or security. He sat down and spoke with the manager. I continued to wait for the police. The police arrived I walked outside to speak with them and he reversed the whole situation on me. I wasn't even allowed an opportunity to talk. I over heard him tell the police that I picked up a receipt from the ground. I was than drove away from the Mc Donald's in a police car. I have since tried to get down to the bottom of the reason why these individuals handled this situation in such a matter. I am taking steps with the police regarding the actions of the officers, and I am continuing this matter with you to determine the identity of this individual being either a police as stated by the Mc-Donald's manager or an employee of your franchise. I have visited other location but feel very uncomfortable while such action of grievance is in progress. While at a location located on Chicago and state I sat down to eat and the manager sat behind me. The next day employees sat behind me. I didn't take this personal as I didn't have a problem with my services.   I just assumed at that time I was sitting in their lunch area. I am asking that you look further into this matter; as such experience with your company has really made me fearful of your company, along with the Chicago Police Department.

Thank You,

Kimyuna Jackson